24-21-19 United States v. Coonan Good morning. This case is before you because of age discrimination. Instead of being 78 years old, if Mr. Coonan were my age, 36, if he had been born in 1988 as I was, the district court would not have said that the First Step Act doesn't apply to him. The question isn't what his age was. The question is what the age of his crimes was, right? Isn't the distinction when he committed his crime? This is a proxy for age, Your Honor. Why is it a proxy for age? In the same... As it happens, of course, now that we're so far removed from 1987, it's only people who are pretty old and committed pretty bad crimes and have pretty long sentences who are still subject to the old law. But the same issue that you're presenting, it seems to me, could have been presented in 1990. He could have made some application under the law. Well, he couldn't because the First Step Act... The First Step Act didn't go into effect until... Yeah, the First Step Act didn't, but still, there were provisions for compassionate release. And the provision in the 1990s for both old law and new law defendants was that you needed to go through the Bureau of Prisons. Right, but there still were two different statutes. One of them was Section 4805 or whatever, and the other is 3582 or whatever. He could have made an application under 3582. There would be no issue of his age. He would be the same age as some other guy who committed a crime yesterday and got sentenced to 100 years in prison, but he would still have had to apply under the right provision because the new provision didn't apply to him. So it's not like some proxy for age. It's not like somebody's making this up in order to get at old people. It happens to fall upon... You're making some kind of disparate impact case? No, Your Honor. I'm not talking about disparate impact. I'm talking about from the time that the Sentencing Reform Act went into effect in 1987 until 2018. It was the same for both old law defendants and new law defendants. You have to go through the Bureau of Prisons. The Bureau of Prisons has to be the one to bring the compassionate release... And then they made a change with respect to people who, under the new law, have non-parolable sentences. They did not make that change to people who had parolable sentences who have a regular ability to ask for release on conditions from the parole commission. They drew that distinction. Now, that may be an irrational distinction in your view. You may have some that this is age discrimination. If this distinction is only being made in 2018, which of necessity would have to be the case... Do you think the intention here was to discriminate against old people? I think if in 2018 you're saying that the distinction is whether your crime occurred over 30 years ago, then yes, I think it clearly only applies to older offenders. You have to be at least 56 years old now for this to be far new from moving directly from compassionate release. But doesn't it still come down to the question of was that a rational distinction or not to make? Unless you have some evidence that it was intended to discriminate, which may be... I understand all the problems with trying to identify the is not a case where somebody makes snide remarks on the legislative floor about we can tailor this so that it only will hit black people. It will only hit old people. It will only hit women. We don't have any of that here. So doesn't it come down again to just the question of they had a reason. Is that reason a good reason or a bad reason? It does come down to whether it's irrational, which it is. There's no rational basis for discriminating against the oldest members of the inmate population. Is there a rational basis for discriminating against, as you would term it, which is fair enough I guess, against people who have the ability to seek release from the parole commission and only providing this additional privilege to people who are locked into non-parolable sentences? It's still irrational. The ability to go before the parole commission is not the same as the right to meaningful judicial review, which is what the legislature was intending in the First Step Act. Parole is not a sentence reduction. A person on parole is still serving a sentence, but under the supervision of the parole commission. Just as when the Bureau of Prison sends an individual to a residential reentry center, that is not a reduction of their sentence. Can I ask, just step back a second and contextualize this conversation we're having. My understanding of the relevance of your constitutional concern, and you can tell me if I'm wrong, is not that you've brought this case as a direct challenge to the constitutionality of the statute. It's that you've invoked the principle of constitutional avoidance to suggest to us that we ought to interpret the statute so as to avoid these thorny questions. Am I misunderstanding that, or do you want us to view this as if you had pled it as a constitutional challenge to the  Right, so under the principle of constitutional avoidance, if the district court's interpretation violates the Equal Protection Clause, as we are arguing that it does, then you have to choose the interpretation that does not violate the Equal Protection Clause. Your premise there is that it does violate, not that it's a thorny constitutional question, that's what you just said, if it is a constitutional violation. So the constitutional avoidance doctrine, there's some debate in the authorities, I believe, as to whether it can also apply to just avoid the question. You didn't argue this below until your reply. We argued it in the district court in our reply as a direct response to the government's argument that it does not apply to old law individuals. So can I, again... Doesn't that put us in plain error, do you think? No, it doesn't, because the case law is clear that if the argument is being raised in order to address, you know, if it's related to the argument of opposing counsel... Well, you didn't raise it affirmatively, and now you are in a different way. Isn't that trying to resurrect a forfeited argument? It's not forfeited, Your Honor. Again, if the argument is directly related to opposing counsel's argument, then it's timely pled. So can I, again, I'm sorry, I just want to focus this, because when I think of the principle of constitutional avoidance, I think of a principle that says if you can read a statute both ways, and one is clearly constitutional and one is not, or you want to avoid it, you take the clearly constitutional path. I've not understood it as a basis for saying if a statute clearly says X but it's unconstitutional, you have to read the statute as saying Y. And so it seems to me I'm now hearing what you're saying as a constitutional challenge to the statute rather than an argument that the constitution is relevant to our interpretation. If we conclude the statute is clear on its face and it does make the distinction that the court says it makes, do we still go on to your constitutional argument, or does that become a new case for a new plaintiff who says, okay, I'm going to challenge the constitutionality of the statute that makes this distinction because it puts old law defendants in a disadvantageous position relative to new law defendants? Well, we are making a constitutional challenge, but it's not to have the statute struck down, obviously. It's to choose the interpretation of the statute that does not violate the constitution. So in order to do that, we have to decide. I guess that's the preliminary step that I want to make sure we agree. We would have to decide, and implicit in your argument, I think, is that the statute is at least ambiguous on the question, which is why we start looking to the Constitution to help us break the tie. Well, from my perspective, it's not ambiguous because from my perspective, any means all. And, in fact, there's a, I think, telling misstatement in the government's brief. I believe it's page 15. They actually say all cases as if that is a phrase in the statute to refer to where it says any case. But if the statute is, you know, you're looking at this as if Title 18 is enacted as a single statute somehow, but it's not. It's just a codification of a lot of separate things. The statute is the Sentencing Reform Act. That's what contained the words in any case, right? That's not part of the First Step Act. That was already there. But what we're talking about is the transitional rule for the Sentencing Reform Act, not for the First Step Act. It's sort of odd to call it a transitional rule. It's a transitional rule that has lasted for a generation or more. It's a rule, Your Honor, that is to prevent the ex post facto applications of what were then mandatory guidelines. No. This particular provision that says in any case is part of a big statute that says we're throwing out this whole system, instituting a whole new system. Going forward, this is how the world is going to work. And within that new world, there's something that says in any case this can happen. But that's in the new world. There's still the old world, and the old world was preserved. And that old world continues to have Section 4805. I must admit I don't know if the government will even know anything about this. I don't know why Congress has chosen to keep extending that when they could have just said for all forever. They said for five years, then for three years more, then for one year more, then sometimes for 17 days more. That's part of the mystery of how Congress works. But it's quite clear that there's an old regime and a new regime, and in any case is part of the new regime. It's not separate, standing above new regime and old regime that says, well, in every case, new and old, we're going to have these rules. It's part of the new regime. Again, Your Honor, when you say it's part of the new regime, from the time that the sentencing reform act goes into effect in 1987 until 2018, as far as compassionate release goes, there is not two different tracks. You go through the Bureau of Prisons, whether you're an old law defendant or under the guidelines. But they chose to amend only the rule that is part of the new regime. They did not choose to amend Section 4805. They could have done that, too, I guess. They could have said, we'll resuscitate Section 4805. Here's how that's going to be interpreted. Or they could have made a separate statute that falls outside of the codification situation and just says, from now on, everybody's going to get this. That's what was proposed to be done, right, in the last Congress and never passed. What was proposed was to add to where it says, in any case, without limitation, including but not limited to before 1987. But the Supreme Court has already said you do not have to write, you know, to explain words if they're already clear on their face as any is. But those words are not clear on their face because what they're clear on their face is, from the time they were enacted in 1984, that this in any case means in any case under the new regime. Again, I disagree. That means when they were saying this was only going to apply to offenses after November 1, 1987, that was because of an ex post facto consideration. That is not an issue in 2018. Well, that's what you're saying. I mean, that was part of why they made a new regime and kept an old regime. But I just don't understand still why every court that has decided this question has come to this conclusion. I should say the reason is because it is very clear that that's what was intended. Some of us actually lived through those things, those changes. Some of us prosecuted people before 1984, after 1984, in the transition period, after 1987, defended people in the 1990s. You know, this is what the way Congress created a two-level system. And you'll recall, Your Honor, that it was clear, again, from the legislative history, from the case law, that, again, this rule saying that this will only apply to cases after November 1, 1987, was to prevent an ex post facto issue in terms of applying the mandatory sentencing guidelines or not having the parole commission to old law defendants. There is no ex post facto issue in 2018 for Congress when they're passing the first amendment. It seems like your argument is the purpose of the new regime, old regime language doesn't apply to this new context. And therefore, we should understand the language, which has remained the same throughout, as meaning something different because the underlying purpose is different now. Is that kind of your argument? Kind of. The underlying purpose is absolutely different in passing the First Step Act of 2018, when the purpose is to give defendants the right to meaningful judicial review of compassionate release motions than it was in passing the rule back in the 80s that the Sentencing Reform Act would only apply to... Of course, when they passed the Sentencing Reform Act, they also did not say the guidelines going forward will apply if they turn out to be lower than what the sentence might have been under the old law, right? That's correct. Even though that has no ex post facto concern. Correct. They could have done that too, and they didn't do that either. Correct. They chose to make it a broad rule there instead of leaving it open to burden some litigation over it. Thank you, Counselor. You're preserved. Thank you. Good morning, Your Honors. May it please the Court. My name is Jerry Fang. I represent the government in this appeal and in the proceedings before Judge Gardefee in the District Court. This is a case about statutory interpretation. The Sentencing Reform Act created a new sentencing statutory scheme to take effect on November 1st, 1987. And in the Sentencing Act of 1987, Congress stated in no uncertain terms that the new statutory scheme, quote, shall apply only to offenses committed, unquote, after the effective date of November 1st, 1987, and that the old sentencing regime shall remain in effect for an individual like Mr. Coonan who committed an offense before the effective date of November 1st, 1987. There's no factual dispute that Mr. Coonan committed his offenses before November 1st, 1987, and so the new statutory scheme, which includes Section 3582C, plainly does not apply to him. Instead, as Congress stated in 1987, the statutory regime that applies to Mr. Coonan is Chapter 311, which includes Section 4205G, which authorizes a sentence reduction only upon a motion made by the Bureau of Prisons. And as this Court has concluded in Rivera-Rios, nothing about the First Step Act of 2018, which amended 3582C1 to permit courts to consider sentence reduction motions that were also brought by defendants on their own behalf, altered Section 4205G, the eligibility rules as to which regime applies to which defendants, or the in any case language in 3582. It's still a little hard, isn't it, to think that the people who were behind the First Step Act and the people who passed it and the president who signed it were actually thinking about Mr. Coonan or people of his ilk, just as I don't think it's logical to think they were trying to discriminate against them because we hate old people. It's a little hard for me to understand why there's no mention of this, why it just so happens that, is it the case really they just forgot about the fact that there were people in prison who equally had before the First Step Act the same rights to apply for compassionate release but only go to court on it with the backing of the Bureau of Prisons? That they just didn't realize that they were amending the current law and not thinking about what impact that would have on other people? Your Honor, I don't know the answer to that question in terms of why exactly Congress Nobody said anything about that at the time. That's my understanding, Your Honor, and the point is what Congress ultimately did is it only amended Section 3582C1A to expand the universe of potential movements under that new regime that doesn't apply to Mr. Coonan to also include defendants who are bringing such motions on their own behalf. Which again, as this Court recognized in Borelli, another case that came after the First Step Act Those are both summary orders, right? Rivas and Borelli? That's correct, Your Honor. Maybe it's time to put that in an opinion? Well, obviously defer to the Court on that. Are summary orders the charm? Your Honor, to be sure, they are summary orders and they don't have precedential value. But as this Court has recognized on numerous occasions, the fact that this Court denies precedential effect to summary orders doesn't necessarily mean that it finds itself free to rule differently. One of my colleagues once opined that the fact that it was a summary order makes it a better precedent because it shows that the Court thought it was so obvious that it didn't even need to be written in an opinion. Do you by any chance know, I'm just curious, how many inmates there are around the country right now serving pursuant to the old law regime? I don't, Your Honor. I'm curious. Apparently the Parole Commission doesn't either. I mean the appellant points out that a few years ago there were some statistics issued and the statistics showed in one year an increase in people serving sentences under the old law, a substantial increase, which is kind of hard to believe could happen since by and large the people under the old law should decrease over time as they either get released or die. So it's a sort of, they make a pretty good point that Congress isn't the only, aren't the only ones who have forgotten about these people. There's not even an accurate count of them. So if, unless you, is that a question? And Your Honor, far be it from me to speculate, but one could conceive hypothetically of a situation in which an individual committed an offense that predates the effective date, that has no statute of limitations, and is only charged later after the fact. Unless, of course, it could also be that there are a lot of parole violators one year who are on parole and now they're back in the prison system. But anyway, there seem not to be good statistics on this. So if, and I'm not saying that that is this case, but if someone brought a constitutional challenge and they had a whole bunch of data, and I don't, let's put aside the notion of age. Let's acknowledge sort of a rational basis level challenge. And they had a whole lot of data that said that nobody who's operating under the old law system gets out early under parole or otherwise. And 20 percent, and I'm just making up these numbers, of individuals who are sentenced under the new regime who eventually get their sentences reduced on the basis of the First Step Act. Would that create a constitutional concern of arbitrariness? I don't believe so, Your Honor, because the question as to whether there was some sort of a rational basis for distinguishing between old law and new law prisoners is determined sort of at the time of, at the time that Congress chose to make that distinction. Well, no, no. I think in my hypothetical the challenge would be that the First Step Act, by including this one population and excluding the other because of the way it was adopted, that the way it's now applied, that distinction may have made sense for however many years it's been in effect. But now as it's being applied to provide access to an opportunity to get out earlier to one big chunk and not to some chunk, and I don't know how small or big the other chunk is, that's the potentially constitutionally concerning fact. Again, I realize we're getting beyond, but the constitutional issues have surfaced in both your briefs, and I'm just sort of interested in your position that it doesn't matter what the data tells us, that there's no universe in which providing access to prisoner-initiated early release creates constitutionally unfair advantage over folks under the old law regime. And, Your Honor, certainly we don't think this is dispositive to the appeal, but with respect to Your Honor's constitutional question, the question is, in amending 3552C in 2018, did Congress have, did Congress make any distinction? And we would submit that Congress didn't. They chose to amend a particular statute. They could have, I suppose, as Judge Lynch referenced, decided to amend any other provision of Title 18 as well, including 4205G, including enacting a new statute to govern compassionate release. But the point is, these policy considerations, at the end of the day, may have some intuitive, persuasive value, or may make sense. But the relevant question is, what did Congress actually do? Well, but the constitutional question is, what Congress actually did. You're rational. And I thought your answer was, we would answer that question as of the time that the legislature was active. It may turn out later on that they made a certain mistaken assumption that parole was a lively possibility, and therefore there was no need to change the regime for people who had access to that system. Now if you have data that postdates 2018 and says there's been a – now it turns out that nobody's getting – over the last seven years, we know that this didn't work because nobody is getting paroled. So they are being treated the same way that new law people would be treated, as if they had unparolable sentences and they haven't been given access. I thought your answer was, that doesn't say that what they chose to do in 2018 is irrational. On the other hand, I suppose if you had data showing that in 2018 it was already apparent that parole was a mirage, that might make a difference. But at any rate, we don't have any of that data here before us. We don't even have a straight-up constitutional challenge before us. That's correct, Your Honor. And I see that I'm over time, and so I'll just wrap up very briefly. None of that was something that Judge Gardefee decided. And again, rightfully so, because the government never raised that argument in its opposition in the district court proceedings. What the government had said, which are the arguments that the government primarily advances here, is that the district court, as a statutory interpretation matter, properly denied Mr. Coonan's motion because the defendant is categorically ineligible under the statute for sentence reduction under 3582, and he was ineligible for 4205G relief because the BOP never made such a motion on his behalf. Unless the court has any further questions, the government will submit. Thank you, counsel. We'll hear about it. Thank you. And that figure was that the parole commission had said that there had been a 69% increase in old-law inmates that were incarcerated in one fiscal year, which seems to be an impossibility, suggesting that they have no idea or had no idea at that time how many old-law inmates were under their purview and also that they were not paroling anyone because how can you be getting an increase in the figures if you're paroling inmates? There is no rational basis to making this distinction, to discriminating against the oldest inmates in our population. We are talking about people who have the fewest years left to live and who have the lowest risk of recidivism. This has been confirmed in study after study after study. There is no way that Congress intended in 2018 to make this distinction and to say that in this case any does not refer to people who committed their offenses this many years ago. And if they had made that distinction, it would not be rational. It would not withstand even rational basis scrutiny. So, Your Honor, we do submit, and this issue about constitutional avoidance was not raised in the prior summary orders. Neither was the equal protection issue. We submit that under the principles of constitutional avoidance as well as what the plain meaning of any has been even in the 1980s and going back to the 1970s, Congress intended for the First Step Act to give a right of meaningful judicial review on compassionate release motions for all inmates and not just for inmates under the guidelines. Thank you. Thank you, counsel. You may both take the case under advisement.